IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **BAYLOR HEALTH CARE SYSTEM**, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. **3:11-CV-3023-L** |
| § | |
| **EQUITABLE PLAN SERVICES, INC.,** § | |
| § | |
| Defendant. § | |

## <u>AMENDED MEMORANDUM OPINION AND ORDER</u>

Before the court is Baylor's Motion to Reconsider, filed March 23, 2012. After careful consideration of the motion, briefing by the parties, record, and applicable law, the court **grants** Baylor's Motion to Reconsider, **vacates** its March 15, 2012 memorandum opinion and order, and **issues** this amended memorandum opinion and order in its place. As herein explained, however, *the court's determination in this regard does not affect the outcome of the case or the court's prior determination that the arbitration award should be affirmed*. Although the court reaches the same result in affirming the arbitration award, it does so for different reasons after further review of the record. By this order, the court also determines the appropriate prejudgment interest rate and the date of accrual for prejudgment interest.

This action was filed on November 3, 2011, by Plaintiffs Baylor Health Care System, Baylor University Medical Center, and the Heart Hospital Baylor Plano (collectively "Plaintiffs" or "Baylor") to vacate an arbitration award entered in favor of third-party health care claims administrator Defendant Equitable Plan Services, Inc. ("Defendant" or "EPS"). The case was referred to Magistrate Judge Renee Harris Toliver, who entered Findings, Conclusions and

Recommendation of the United States Magistrate Judge ("Report") on February 27, 2012, recommending that Plaintiff's Application to Vacate Arbitration Award (Doc. 2) be denied and that Defendant's Cross-Application to Confirm Arbitration Award (Doc. 15) be granted. Baylor filed objections to the Report on March 12, 2012.

Having reviewed the pleadings, file, and record in this case, and the findings and conclusions of the magistrate judge, the court determines that the findings and conclusions are correct, except for those pertaining to her determination that: (1) the HSA arbitration provision applies to the parties' dispute, and (2) the TAA alone governs the parties' arbitration agreement. In all other respects, the magistrate judge's findings and conclusions are correct. The court therefore **accepts in part and rejects in part** the findings and conclusions of the magistrate judge as herein set forth. Accordingly, Baylor's objections are **overruled**; Plaintiff's Motion to Vacate Arbitration Award (Doc. 2) is **denied**; Defendant's Cross-Application to Confirm Arbitration Award (Doc. 15) is **granted**; and Defendant's Motion to Unseal the Record (Doc. 14) is **denied as moot**.

## I.     Background

Plaintiffs are Texas corporations that provide health care in North Texas. Many of Baylor's patients are members of health plans that gain access to Baylor's services at discounted rates through contracts with insurance companies and preferred provider organizations ("PPOs") such as HealthSmart Preferred Care. On July 1, 2002, Baylor Health Care System, as "Hospital," entered a Hospital Services Agreement-PPO ("HSA" or "Hospital Agreement") with North Texas Healthcare Network, as "PPO." A May 1, 2004 Amendment to the HSA reflects the merger of North Texas Healthcare Network with HealthSmart Preferred Care ("HealthSmart").

EPS is a third-party claim administrator ("TPA") that is located and incorporated in Oklahoma. EPS provides third-party administration services to regional employers who hire companies like EPS to process and decide claims for benefits under company plans. EPS makes the preliminary decision whether to pay or deny a claim. EPS does not pay the claims with its own money. Employer and employee contributions that are held in trust are used to pay claims. If claims are determined to be payable, they are paid from plan assets, not from EPS's assets. In its role as a TPA, EPS acts as a trustee and plan fiduciary, and is compensated monthly by employers. EPS contracts with PPOs, which in turn contract with health care providers to provide services to PPO members at fixed rates.

On August 1, 2002, after HealthSmart entered the HSA with Baylor, EPS entered a Third Party Administrator Service Agreement for Provider Network and Utilization Management Services ("TPA Agreement") with HealthSmart. Pursuant to the TPA Agreement, EPS agreed to join HealthSmart's PPO Network that included Baylor. On March 1, 2007, HealthSmart and EPS executed an amendment to the TPA Agreement ("Amendment"), in which the parties acknowledged that HealthSmart's provider contracts contain time payment parameters. Neither the TPA nor the Amendment refers to the HSA or the time parameters included in the HSA.

Baylor initiated the underlying arbitration on May 17, 2010, pursuant to the arbitration provision in the HSA, contending that EPS breached section 4 of the HSA that deals with payment of claims. According to Baylor, because EPS did not pay eight claims within forty-five days from receipt as required by section 4.4 of the HSA, the claims were not eligible for Baylor's discounted rates. Baylor therefore contended that it was entitled to $64,829.41 for Baylor's Normal Billed Charges, less the discounted amounts paid by EPS. The main bone of contention between the parties

in the arbitration and this appeal is whether, under section 4.4 of the HSA, Baylor was permitted to

send what the HSA refers to as a "Clean Claim" for "Covered Services" to EPS _or_ HealthSmart as

EPS's agent to trigger the forty-five-day deadline for payment of claims.  Baylor contends that it was

entitled to send claims to either EPS or HealthSmart, whereas EPS contends, and the arbitrator

agreed, that HealthSmart is not EPS's agent, and to trigger the forty-five-day payment deadline in

section 4.4(a) of the HSA, Baylor was required to submit a "Clean Claim" for "Covered Services"

to EPS.

      In response to Baylor's initiation of the underlying arbitration, EPS contended that it had

never seen the HSA before the dispute arose and was not provided with information regarding the

payment deadline or surcharges claimed by Baylor.  EPS therefore maintained that its payments were

timely. EPS further disputed whether it was subject to the HSA, or the arbitration provision in the

HSA, since it was not a party to the contract, and the TPA contained an arbitration provision that

differed in scope from the HSA arbitration provision. EPS therefore proposed that the parties

proceed with a "self-administer[ed]" arbitration, which according to EPS, was not subject to either

the arbitration provision in the HSA or the TPA.  Even if it was subject to the HSA payment

requirements, EPS contends that it would not have known when HealthSmart received claims from

Baylor for purposes of calculating the payment deadlines.

      After a one-day arbitration hearing in which three witnesses testified, including one Baylor

witness, and other documentary evidence was admitted, the arbitrator entered an award in favor of

EPS on August 16, 2011, concluding that EPS did not breach the HSA.  In reaching this conclusion,

the arbitrator rejected Baylor's argument that HealthSmart was EPS's agent for purposes of receiving

claims and related payment information under the HSA.  Based on section 6.3 of the HSA, the

arbitrator concluded that Baylor, HealthSmart, and EPS are independent entities and none are agents of any other party.  The arbitrator also determined that Baylor was required under the HSA to send the claims at issue to EPS but failed to do so. The arbitrator further concluded that EPS mistakenly caused plan participants to make overpayments totaling $37,439.23 to Baylor and EPS was therefore entitled to repayment in this amount on behalf of the plan participants. In addition, the arbitrator determined that EPS was entitled to recover $55,811 in attorney's fees, $8,149.49 in costs, and prejudgment interest at the maximum allowable rate.

Baylor initiated this proceeding, based on diversity of citizenship jurisdiction, seeking to vacate the arbitration award on the grounds that the arbitrator exceeded his authority in interpreting the contracts at issue by adding to, subtracting from, or modifying the contracts in violation of section 7.5 of the HSA.  The magistrate judge recommended that Baylor's Application be denied and EPS's Cross-Application be granted.

In reaching this determination, the magistrate judge concluded that the Texas Arbitration Act ("TAA") governed the parties' arbitration agreement.  The magistrate judge also agreed with EPS that Baylor's failure to provide a complete record on appeal of the arbitration proceeding, including a transcript of the proceedings and witness testimony, was fatal to its motion to vacate the arbitrator's award.  The magistrate judge disagreed with Baylor's contention that the arbitrator's interpretation of the agreements at issue could be conducted by simply reviewing the language of the agreements to determine whether the arbitrator had exceeded his authority by violating section 7.5 of the HSA because three witnesses testified at the unrecorded arbitration hearing regarding the agreements at issue and the parties' conduct pertaining to breach of the agreements; only three of the 33 exhibits admitted and discussed extensively during the arbitration hearing were submitted to the

court; and only four of the 21 pleadings filed during the arbitration proceeding were submitted in support of Baylor's Application. Baylor filed objections to the Report, contending that a record of the arbitration was not necessary to review the arbitrator's interpretation of the parties' agreements, which, according to Baylor, could be reviewed as a matter of law.

On March 15, 2012, the court determined that the findings and conclusions of the magistrate judge were substantially correct, and accepted them as those of the court, except to the extent modified in the court's memorandum opinion and order.  Specifically, the court determined that, with regard to certain issues, review of the arbitrator's decision could be done without a complete record.  The court therefore undertook a review of the arbitrator's decision, as to matters objected to by Baylor, to the extent that it determined there was sufficient information in the record.  The court nevertheless reached the same result as the magistrate judge with respect to Baylor's Application.  The court therefore overruled Baylor's objections to the magistrate's judge's Report, denied Baylor's Application, and granted EPS's Cross-Application.

The court also requested supplemental briefing as to whether Defendant was entitled to prejudgment interest and, if so, the rate to be applied.  In its Motion to Reconsider, Baylor seeks reconsideration of the court's March 15, 2012 opinion on the grounds that the court did not consider all of the arguments and briefing presented to the magistrate judge.  Baylor also argues that EPS is not entitled to the prejudgment interest ordered by the arbitrator.

## II.    Sufficiency of Baylor's Objections

### A.     The Parties' Contentions

In summary, Baylor contends in its Motion to Reconsider that the court should have but did not consider all of the arguments previously raised in its November 16, 2011 Memorandum Brief

in Support of Application to Vacate Arbitration Award ("Memorandum Brief") (Doc. 8), which was

filed thirteen days after Baylor initiated this action and moved to vacate the arbitration award (Doc.

2) on November 3, 2011.  Specifically, Baylor states in its Motion to Reconsider:

> [I]t appears that Baylor's Memorandum Brief  in Support of Application to Vacate
> Arbitration Award ("Memorandum Brief") and appendix thereto, filed on November
> 16, 2011, may not have been considered by the Court in its review of the  Findings,
> Conclusions and Recommendation of the United States Magistrate Judge ("Report").
> The Memorandum Brief presented Baylor's full explanation of the specific instances
> in the arbitration award ("Award") whereby the arbitrator exceeded his authority in
> violation of Section 7.5 of the Hospital Services Agreement    PPO ("Hospital
> Agreement").  Additionally, as the Memorandum Brief was filed more than a month
> before Equitable Plan Services, Inc. ("EPS") submitted its Response in Opposition
> to Baylor's Application to Vacate Arbitration Award ("Response"), EPS had the
> opportunity to   and did   specifically respond to Baylor's arguments provided
> therein.  For these reasons, Baylor respectfully moves the Court to reconsider its
> Order.

Pls.' Mot. 2.  Baylor's contention in this regard is based on the following excerpts, which are located

at pages 7, 8, and 11 of the court's March 15, 2012 memorandum opinion and order, and focuses on

the language italicized:

> *Baylor's Application to Vacate the Arbitration Award takes issue with
> Findings of Fact Nos. 5-14, 24, 25, 27, 28, 29, and Conclusion of Law Nos. 1 and 7
> in the arbitration award but does not otherwise state why the arbitrator exceeded his
> authority in [] making these factual findings and legal conclusions*.  Baylor contends
> that the arbitrator exceeded his authority because these factual findings and legal
> conclusions violate Section 7.5 of the HSA that states: [i]n rendering such decision
> and award, the arbitrators shall not add to, subtract from or otherwise modify the
> provisions of this Agreement or any agreement entered into pursuant hereto."
> *Baylor, however, provided no explanation in its motion or application why it believes
> these factual findings and legal conclusions by the arbitrator subtract from or modify
> the HSA*.

Mem. Op. and Order 7 (emphasis added) (citations omitted).

> Baylor contends that the arbitrator's Findings of Fact No. 5 results in
> "[r]ewriting the definitions of 'Covered Services' and 'Normal Billed Charge,'
> despite their clear enunciation in Article I of the Hospital Agreement." Findings of
> Fact No. 5 states: "[c]laims of payment for medical services in excess of Baylor's

Normal Billing Rates are not 'Covered Services' under Baylor's Hospital Services Agreement." Article I of the HSA defines "Covered Services" as "care, treatment, services and supplies for which a benefit is payable under the applicable Health Plan."

It is not entirely clear from the record, but it appears that the arbitrator concluded that medical services in excess of Baylor's Normal Billing Rates do not constitute a benefit that is payable and therefore do not qualify as Covered Services. Alternatively, it appears that the arbitrator agreed with EPS's argument that even if the section 4.4(a) deadlines were triggered, and even if EPS missed the 45-day payment deadline, the surcharges sought by Baylor are not permitted under the Plans at issue. EPS's argument in this regard is based on evidence and testimony that were not before the court. *Moreover, Baylor fails to provide any explanation why it believes this finding by the arbitrator subtracts from or modifies the HSA. Without more information, the court cannot conclude that the arbitrator exceeded his authority.* The court therefore *overrules* Baylor's objections regarding this finding by the arbitrator.

Mem. Op. and Order 11 (emphasis added) (citations omitted).  Baylor asserts that, contrary to the court's order, its Memorandum Brief explained in detail how the arbitrator exceeded his authority with respect to his findings and conclusions.  Baylor contends that pages 11 through 23 of its Memorandum Brief set forth the basis for each of its assertions that Findings of Fact Numbers 5-14, 24, 27, 28, 29, and Conclusions of Law Numbers 1 and 7 constitute a violation of the arbitrator's powers under Section 7.5 of the Hospital Agreement.  Pls.' Mot. 4.

Baylor also takes issue with the following excerpts from the court's order, and in particular the italicized language:

*For the first time in its reply brief, Baylor maintained that these findings and conclusions by the arbitrator "materially supplement[], disregard[], and/or modif[y] multiple sections of the Hospital Agreement, the TPA Agreement, and the Amendment thereto." Baylor further asserted that these modifications "drastically alter the relative duties and obligations of Baylor, EPS, and HealthSmart." Id. Baylor listed four reasons why it believes the arbitrator's findings and conclusions subtracts from or otherwise modifies these agreements in violation of section 7.5. While these four specific arguments asserted by Baylor were not raised in its Application to Vacate the Arbitration Award, they are limited to Findings of Fact Nos. 5-14, 24, 25, 27, 28, 29, and Conclusion of Law Nos. 1 and 7 and the ground for vacateur asserted in Baylor's Application. Thus, the court considers each of the four*

*arguments asserted for the first time in Baylor's reply brief, but only if doing so will not prejudice EPS, who did not have the opportunity to respond to these specific arguments. See Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 545, 550-51 (N.D. Tex. 2006).

Mem. Op. and Order 7-8 (emphasis added) (citations omitted).

Baylor contends that the arbitrator's Findings of Fact Nos. 24 and 25 "[s]uperimpos[e] a requirement on Baylor to advise EPS of payment deadlines, despite the fact that this is contrary to the terms of the Amendment to TPA Agreement ('Amendment') and found nowhere in the Hospital Agreement."

Findings of Fact No. 24 states: "Baylor's Agreement with HealthSmart requires Baylor to notify Equitable of any relevant time-frames." Findings of Fact No. 25 states: "Baylor failed to notify Equitable of the time-frames in its agreement with HealthSmart which Baylor was required to do." It is not entirely clear from the record before the court, but these findings by the arbitrator appear to have been made based on his interpretation of the parties' obligations under section 4 of the HSA, which the court already concluded is ambiguous. *Moreover, because EPS did not have the opportunity to respond to this specific argument by Baylor, it would be unfair to EPS for the court to address it even if the record were sufficiently complete. The court therefore declines to address this issue that was raised for the first time in Baylor's reply. See Weber*, 455 F. Supp. 2d at 550-51. For both of these reasons, the court overrules Baylor's objection as to these findings by the arbitrator.

Mem. Op. and Order 10-11 (emphasis added) (citations omitted).

Regarding the first excerpt, Baylor contends that, contrary to the court's order, it "first presented its in-depth discussion of the reasons supporting vacatur in its Memorandum Brief" and "[t]he four points made in Baylor's Reply were simply a summary of the arguments included [on pages 11 through 23] in the Memorandum Brief." Pls.' Mot. 4. Regarding the second excerpt, Baylor asserts that "it appears that this Court declined to consider Baylor's argument regarding why the arbitrator exceeded his authority with respect to Findings of Fact Numbers 24 and 25 on the basis that it would prejudice EPS for not having an opportunity to respond." Pls.' Mot. 4. As previously noted, Baylor contends that its Memorandum Brief contained all of its arguments and was filed more than a month before EPS submitted its response to the court and as a result, EPS previously had an

opportunity to respond to each of Baylor's arguments supporting vacatur before the magistrate judge issued her Report.

EPS counters that Baylor implicitly admits in its Motion to Reconsider that it failed to bring its Memorandum Brief, or the arguments and evidence contained in that brief, to the court's attention when Baylor filed its objections to the magistrate judge's Report. EPS contends that, to the extent Baylor was relying on the prior arguments contained in its Memorandum Brief, it was responsible for submitting that brief or reiterating the arguments previously made in that brief when objecting to the Report. EPS further contends that Baylor cannot use a motion to reconsider to revive arguments made in its Memorandum Brief or other arguments that it failed to make in objecting to the magistrate judge's report. For support, EPS cites *Gonzalez v. Thaler*, No. 4:09-CV-598, 2010 WL 742330 (N.D. Tex. March 1, 2010), for the proposition that objections under Rule 72(b) of the Federal Rules of Civil Procedure must be specific, and [a]n objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific."

In addition, EPS contends that Baylor's Motion to Reconsider should be denied because: (1) the award should be confirmed for the reasons previously explained by this court in its March 15, 2012 memorandum opinion and order; (2) the award must be confirmed based on the absence of an arbitration hearing transcript, and in particular, a transcript of the testimony of Baylor's own witness which negates the arguments raised by Baylor on appeal; and (3) EPS provided additional reasons in its response to Baylor's Application that support its position that the award should be confirmed. As an example of the latter, EPS points to its prior argument that section 4.4(a) of the Hospital Agreement only provides for the payment of "Clean Claims" for "Covered Services," which by definition does not include the surcharges or late fees sought by Baylor. EPS further asserts that such

surcharges are prohibited by the Employee Retirement Income and Security Act ("ERISA"), which only permits the payment of plan assets for benefits provided to participants and beneficiaries, not for paying surcharges to entities like Baylor.

### B.       Discussion

EPS correctly notes that objections to a magistrate judge's findings and conclusions under Rule 72(b) must be "specific."  Fed. R. Civ. P. 72(b).  In this regard, Rule 72(b) provides, "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  *Id.*  Regarding the specificity of objections, the Instructions for Service and Notice of Right to Appeal/Object included in the magistrate judge's February 27, 2012 Report warned: "*An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific*."  Report 11 (emphasis added).  Local Rule 72.2 (a) further requires that "[o]bjections filed under Fed. R. Civ. P. 72(b)(2) must be accompanied by a brief that sets forth the party's contentions of fact and/or law, and argument and authorities."  L.R. 72.2(a).

Here, Baylor filed objections to the Report on March 12, 2012, contending that the magistrate judge erred in determining that confirmation of the award was mandated as a result of its failure to provide a complete record of the arbitration proceedings on appeal.  Although the magistrate judge did not reach the merits of the parties' arguments, Baylor's objections also included arguments as to why it believed the arbitrator exceeded his authority and requested the court to sustain its objections in this regard and set aside the magistrate judge's findings and conclusions.

As previously noted, Baylor contends in its Motion to Reconsider that its objections were only intended to summarize the arguments previously made at length in the Memorandum Brief that

it submitted in support of its Application.  Baylor's objections, however, state that it "provid[ed] this

Court [with] its *specific* Objections for consideration."  Pls.' Obj. 4, ¶ 5. Moreover, in its objections,

Baylor referenced only its "Application" without referring or citing to any arguments in its

Memorandum Brief.  Baylor referred to its Memorandum Brief for the first time in the reply brief

submitted in support of its objections but it did so only generally and without citation to the

Memorandum Brief:

> As Baylor discusses at length in its Memorandum Brief, the analysis of the contracts
> and Award clearly demonstrates that the arbitrator added to, subtracted from and
> modified several material provisions of the parties' contracts.  The modifications are
> significant as they drastically alter the relative duties and obligations of Baylor, EPS
> and HealthSmart.

Reply Br. 5, ¶ 9.  According to Baylor's reply brief, "These modifications, *at a minimum*, include"

the following four examples:

> •    Disclaiming agency between HealthSmart and EPS under Section 7.5
>      of the  Hospital Agreement, despite the fact that Section 7.5 of the
>      Hospital Agreement only precludes agency relationships made by
>      virtue of its own terms.
>
> •    Requiring Baylor to send health care claims directly to EPS to trigger
>      "receipt" for purposes of starting the 45-day payment timeframe,
>      despite the fact that Section 4.4(b) of the Hospital Agreement defines
>      "receipt" as when Baylor sends claims to EPS **or** HealthSmart.
>
> •    Superimposing a requirement on Baylor to advise EPS of payment
>      deadlines, despite the fact that this is contrary to the terms of the
>      Amendment to the TPA Agreement . . . and found nowhere in the
>      Hospital Agreement. . . .
>
> •    Rewriting the definitions of "Covered Services" and "Normal Billed
>      Charges," despite their clear enunciation in Article I of the Hospital
>      Agreement. . . .

*Id*. at 5-6 (footnotes omitted and emphasis added). Baylor asserts in its Motion to Reconsider that

these examples or points were intended merely to summarize those previously made in its

**Amended Memorandum Opinion and Order - Page 12**

Memorandum Brief; however, Baylor's Objection cited only to the Appendix submitted in support of the Memorandum Brief.  Further, although Baylor's use of the language "at a minimum" appears to suggest that there may have been other grounds or examples to support its request to vacate the arbitration award, such vague contentions are insufficient to alert the court as to the other grounds relied on by Baylor in support of its objections.

Baylor further contends that because these arguments and an in-depth analysis of these points were included in its Memorandum Brief, the arguments were not asserted for the first time in its reply brief to this court.  Baylor therefore contends that EPS would not be prejudiced by the court's consideration of these matters because it had an opportunity to respond to Baylor's Memorandum Brief before the magistrate judge entered her findings and conclusions.  The court disagrees.

The court is not a mind reader.  Further, it is not incumbent upon the court to determine which arguments raised in Baylor's prior briefing to the magistrate judge correspond to those in its objections, particularly without the benefit of citations.  Baylor's delay in filing its Memorandum Brief almost two weeks after it filed its Application to vacate the arbitration award further obscured the arguments that it now contends are dispositive.[1]

---

[1] Confusion as to when the Memorandum Brief in support of Baylor's Application should have been filed stems in part from the FAA's and TAA's differing treatment of an application to confirm and vacate an arbitration award. Under the FAA, applications to confirm or vacate an arbitration award are treated as motions, not a pleading initiating an action. 9 U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided by law for the making and hearing of motions."); *Alstom Power, Inc. v. S & B Eng'rs & Constructors*, No. 3:04-CV-2370-L, 2007 WL 1284968, *2 (N.D. Tex. Apr. 30, 2007) (concluding that "Regardless of their designation, the applicable statute makes it unequivocally clear that matters pertaining to arbitration are motions, not actions" for purposes of the Federal Rules of Civil Procedure.). With regard to motion practice, Local Civil Rule 7.1(d) requires that all motions be accompanied by a brief that sets forth the moving party's factual and legal contentions, arguments, and supporting authorities.  Thus, an application to confirm or vacate an arbitration award under the FAA is treated as a motion.  The TAA, on the other hand, treats an application to confirm or vacate an arbitration award as a "civil action."  Tex. Civ. Prac. & Rem. Code § 171.082(b) ("On the filing of the initial application and the payment to the clerk of the fees of court required to be paid on the filing of a civil action in the court, the clerk shall docket the proceeding as a civil action pending in that court.").  As herein explained, the court determines that both the FAA and TAA apply to Baylor's Application and EPS's Cross-Application.

Moreover, contrary to Baylor's contention, EPS is entitled to respond to any objections asserted by Baylor, even if the objections are based on arguments previously presented to the magistrate judge. Baylor failed to make clear exactly what, if any, arguments in its prior briefing that it was relying on in support of its objections.  Because Baylor only alluded in passing to the prior briefing for the first time in its reply, the court stands by its earlier determination that EPS was not given an adequate opportunity to respond to the issues raised in Baylor's reply.  Accordingly, the court determines that neither Baylor's original objections nor its reply brief was sufficiently specific to put the court or EPS on notice that it was relying on arguments raised in its prior briefing.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) ("[G]eneral objections need not be considered by the district court.") (citation omitted).  Even assuming that Baylor's objections were sufficiently specific and incorporated all of its prior briefing, the court determines, for the reasons herein discussed, that its Application and request to vacate the arbitration award nevertheless fail.

III.    **Baylor's Application to Vacate the Arbitration Award**

   A.    **Standard Applicable to Review of Magistrate's Findings and Conclusions**

   A magistrate judge's determination regarding a dispositive matter is reviewed de novo if a party timely objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  A magistrate judge's determination regarding a nondispositive matter is reviewed under the "clearly erroneous or contrary to law" standard.  28 U.S.C. 636(b)(1)(A); Fed. R. Civ. P. 72(a) ("[t]he district judge in the case must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law.").  This highly deferential standard requires the court to affirm the decision of the magistrate judge unless "on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed." *United States v. Unites States Gypsum Co.*, 333 U.S. 364, 395 (1948).  As

explained by the court in *Arters v. Univision Radio Broadcasting TX, L.P.*, No. 3:07-CV-0957-D, 2009 WL 1313285 (N.D. Tex. May 12, 2009):

> The clearly erroneous standard applies to the factual components of the magistrate judge's decision. The district court may not disturb a factual finding of the magistrate judge unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. If a magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, a district judge may not reverse it. The legal conclusions of the magistrate judge are reviewable de novo, and the district judge reverses if the magistrate judge erred in some respect in [his] legal conclusions. [T]he abuse of discretion standard governs review of that vast area of choice that remains to the [magistrate judge] who has properly applied the law to fact findings that are not clearly erroneous.

*Id.* at *2 (citations and internal quotations marks omitted).

### B.     Magistrate's Determination that HSA Arbitration Provision and TAA Apply

The standard applicable to the court's review of the arbitrator's award depends on whether the parties' arbitration agreement is governed by the Texas Arbitration Act ("TAA"), the Federal Arbitration Act ("FAA"), or both.  As noted in the magistrate judge's Report, the parties dispute whether the TAA, FAA, or both apply.  Baylor contends, based on section 7.3 of the HSA, that the parties' dispute is governed exclusively by the TAA.  EPS contends that the FAA applies or that both the FAA and TAA apply.  Based on language in the HSA that arbitration would be conducted in accordance with the TAA, the magistrate judge determined that the TAA applies.  In making this determination, the magistrate judge did not address EPS's contention that the arbitration provision in the HSA between Baylor and HealthSmart does not govern the dispute between EPS and Baylor. *See* Def.'s Resp. 12-17 (Doc. 16).

Neither party specifically objected to the magistrate judge's determination that the arbitration provision in the HSA and TAA govern this dispute. The court therefore previously accepted, without

conducting a detailed analysis, the magistrate's determination that the HSA and TAA apply to the

parties' dispute and the court's review of the arbitration award.  In accepting the magistrate's

determination as to this issue, the court rejected EPS's argument that it was not subject to section

7.5 or any of the other arbitration provisions in the HSA and reasoned that EPS had waived the issue

by seeking confirmation of the arbitration award that determined its rights and duties as a Payor

under the HSA.  Upon reconsidering this issue, the court concludes, for the reasons herein discussed,

that the magistrate judge's determination as to the applicability of the arbitration provision in the

HSA and the TAA is not supported by the record or applicable law and that such error is obvious and

affects the substantial rights of the parties.  *See Taita Chem. Co. v. Westlake Styrene, LP*, 351 F.3d

663, 668 (5th Cir. 2003).

### C. Applicability of HSA Arbitration Provision, TAA, and FAA to Parties' Dispute

Baylor acknowledges that the HSA defines "Party" or "Parties" as Baylor and HealthSmart,

and it is undisputed that EPS is not a signatory to the HSA.  Pls.' Mem. 4.  Baylor nevertheless

contends that the HSA, including the agreement to arbitrate included in sections 7.1 through 7.6 of

the HSA,[2] is binding and enforceable against EPS because the HSA, TPA, and Amendment

constitute a single "unified contract" or "Tri-Party Agreement"[3] and EPS was an intended beneficiary

of the HSA.  Pls.' Mem. 2, 4-8, 11.  Based on the same reasoning, Baylor contends that it is entitled

to enforce the TPA and Amendment between EPS and HealthSmart against EPS, even though Baylor

is not a party or signatory to those agreements.  Because section 7.3 of the HSA refers specifically

---

[2] *See* Pls.' App. 18-19.

[3] Baylor argued similarly to the arbitrator that Texas and federal courts have recognized similar  "tri-party arrangement[s]" in the healthcare context and concluded that the multiple agreements constitute "a single, unified contract."  Pls.' App. 114-16, ¶ 4, n.1; 128-29, ¶ 33.

**Amended Memorandum Opinion and Order - Page 16**

to the TAA, Baylor contends that the parties' dispute is governed exclusively by the TAA, as the HSA expresses a clear preference for the application of the TAA over the FAA.

Baylor further contends that, because the TAA and HSA's arbitration provisions apply to the parties' dispute, the arbitrator's authority in issuing an award was limited by section 7.5 of the HSA to interpreting the contracts at issue without adding to, subtracting from, or modifying them. Section 7.5 of the HSA states that in rendering a decision or award, arbitrators appointed to resolve disputes "shall not add to, subtract from or otherwise modify the provisions of this [Hospital Services] Agreement or any agreement entered into pursuant hereto." Pls.' App. 19. While such a limitation on the arbitrator's authority is not permissible under the FAA, Baylor contends, based on the Texas Supreme Court's opinion in *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 91 (Tex.), *cert. denied*, 132 S. Ct. 455 (2011), that Texas law and the TAA recognize that parties may contractually agree to limit an arbitrator's authority.

EPS argues in response that if the three agreements are a single unified contract as Baylor contends, Baylor's argument regarding the applicability of the HSA's arbitration provisions fails to account for the fact that the TPA also includes an arbitration provision that is different from that in the HSA. EPS asserts that if the court must choose between the two arbitration provisions, the one in the TPA, which gives the arbitrator broader powers, should apply. EPS contends that if it is going to be bound by one of the two arbitration agreements, it should be bound by the one in the TPA that it saw and signed, not the HSA. EPS also maintains that the HSA was executed by Baylor and HealthSmart before EPS contracted with HealthSmart, and that it was unaware of the HSA or HSA arbitration provision until Baylor filed the underlying arbitration. Because the TPA is governed by

Texas law and neither the TPA nor the HSA excludes application of the FAA, EPS argues that the FAA, or both the FAA and TAA apply to the parties' dispute.

EPS also maintains that the court need not determine whether the parties' dispute is subject to the arbitration provisions in the HSA or TPA because the parties' voluntarily elected to arbitrate under an alternative method agreed to by the parties.  EPS contends that Baylor initiated the arbitration with the American Arbitration Association ("AAA") pursuant to the HSA but EPS was unwilling to proceed with arbitration under the HSA and therefore proposed that the parties proceed instead with a self-administered arbitration.  According to EPS, Baylor agreed to forgo arbitration under the HSA as long as EPS agreed to certain conditions.  EPS contends that the parties' correspondence confirms this agreement and that they ultimately proceeded with a self-administered arbitration rather then arbitration under the HSA or the TPA.  EPS does not state how this alternative agreement to arbitrate affects the analysis of whether the TAA or FAA applies but asserts that section 7.5 of the HSA does not apply because the parties ultimately "agreed to arbitration terms that differed from those in the HSA."  Def.'s Resp. 15.  EPS further asserts that the parties' alternative agreement to arbitrate is enforceable because the FAA recognizes that agreements to arbitrate can either be set forth in an existing contract or the parties can simply agree to submit an existing dispute to arbitration as Baylor and EPS did here.  *Id.* (citing 9 U.S.C. § 2).

Upon reconsidering this issue, the court agrees with EPS that the arbitration provisions in HSA and TPA do not govern the parties' agreement to arbitrate because the parties expressly agreed in their written communications to proceed with an alternate form of self-administered arbitration that did not include or retain the terms of the arbitration agreement in the HSA. The court therefore

**rejects** the magistrate judge's determinations that: (1) the HSA arbitration provision applies to the parties' dispute,  and (2) the TAA alone governs the parties' arbitration agreement.

### 1.    The Parties' Arbitration Agreement

The record affirmatively establishes that the parties agreed to forego arbitration under the HSA and TPA and instead proceeded under an alternative agreement to arbitrate, which does not mention the HSA or TPA. Baylor initiated the underlying arbitration on May 17, 2010, pursuant to the arbitration agreement in the HSA. Def.'s App. 4, 11.  By letter dated June 4, 2010, Baylor agreed with EPS's proposal to forgo arbitration under the HSA and proceed instead pursuant to a "self-administered arbitration before a single arbitrator" as long as certain conditions were met. *Id.* 47. Baylor, however, "reserve[d] [its] right to proceed with arbitration . . . pursuant to the Hospital Services Agreement if these conditions are not agreed to and followed." *Id.*

Baylor's conditions or requirements included: (1) agreement by parties as to whom would serve as the single arbitrator; (2) selection of an arbitrator from the North Texas region; (3) venue in Dallas, Texas; and (4) application of AAA Commercial Rules of Arbitration to the dispute.  On June 17, 2010, in response to Baylor's June 4th letter regarding self-administered arbitration, EPS agreed to the terms proposed by Baylor.   Def.'s App. 50.  Baylor's four conditions were apparently satisfied because a December 7, 2010 letter from Baylor to the arbitrator reflects the parties' agreement to proceed with a "self-administered arbitration" rather than arbitration under the HSA. *Id.* 65.  Nowhere in this letter, the parties' other communications, or the Agreed Scheduling Order signed by both parties on February 28, 2011, is there any mention of the HSA's arbitration provisions or the parties' intent to have the arbitration governed by the HSA, TAA, FAA, or Texas law; nor did

the parties express the intent to limit the arbitrator's authority under section 7.5 of the HSA or any other basis. *Id.*; *see also* Def.'s App. 67-69 (Agreed Scheduling Order).

Baylor did not address EPS's arguments regarding the effect of the parties' agreement to arbitrate pursuant to terms other than those in the HSA. Evidence presented by EPS, however, of Baylor's agreement and written statement that it would resort to arbitration under the HSA *if its* conditions were not met convinces the court that Baylor expressly demonstrated an intent to forgo arbitration under the HSA and proceed instead with the self-administered arbitration based on the parties agreed upon parameters, which did not include section 7.5 of the HSA. *See Stinger v. Chase Bank, USA, N.A.*, 265 F. App'x 224, 227 (5th Cir. 2008) (unpublished) (concluding that arbitration terms in an amended agreement were binding even in absence of a signature because the parties' actions reflected an intent to be bound by the terms of the amended agreement) (citing *Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987)). Thus, even assuming, as Baylor contends, that EPS is a beneficiary of the HSA and previously agreed to be bound to the HSA's payment terms, the court concludes that the HSA does not govern the parties' agreement to arbitrate because the parties agreed to bound by and proceed under an alternate form of self-administered arbitration subject to the limited conditions proposed by Baylor that did not include or retain those in the HSA. Accordingly, the court concludes that HSA arbitration provision, which calls for application of the TAA and contains a limitation on the arbitrator's authority, does not apply; rather, the terms of the parties' alternate arbitration agreement apply.

### 2.       The FAA and TAA Govern the Dispute

When an agreement contains a clause that designates Texas law but does not exclude the FAA, the FAA and Texas law, including the TAA, apply concurrently. *Freudensprung v. Offshore*

*Technical Servs., Inc.*, 379 F.3d 327, 338 n.7 (5th Cir. 2004). Although the parties' alternate arbitration agreement does not specify whether the TAA, FAA, or Texas law applies, both the HSA and the TPA contain general choice of law provisions that call for the application of Texas law, and neither excludes the FAA. The contracts at issue also involve interstate commerce. The court therefore determines that the FAA and TAA both govern whether the arbitration award should be vacated or confirmed. *Id.*; *see also Volt Info. Sci., Inc. v. Stanford Univ.*, 489 U.S. 468, 476 (1989) (concluding that contract incorporating California rules of arbitration was also governed by the FAA because it involved interstate commerce).

>     **D.     Standard for Judicial Review of Arbitration Awards under the FAA and TAA**

Under the FAA and TAA, a reviewing court must confirm an arbitration award unless grounds exist to vacate, modify, or correct its terms. 9 U.S.C. § 9; Tex. Civ. Prac. & Rem. Code § 171.087. Judicial review of an arbitration award is "exceedingly deferential." *Petrofac, Inc. v. DynMcDermott Petrol. Operations Co.*, 687 F.3d 671, 674 (5th Cir. 2012) (quoting *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007)). The party seeking to vacate an arbitration award has the burden of proof, and the court must resolve any doubts or uncertainties in favor of upholding the award. *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 385 (5th Cir. 2004). Likewise, questions of contract interpretation must be decided in favor of the arbitration decision. *Apache Bohai Corp. LDC*, 480 F.3d at 405. The reviewing court may not substitute its judgment for that of the arbitrator merely because it would have reached a different decision or interpreted a contract differently. *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598-99 (1960); *City of San Antonio v. McKenzie Constr. Co.*, 150 S.W.2d 989, 996 (Tex. 1941) (same); *Riha v. Smulcer*, 843 S.W.2d 289, 292-94 (Tex. App.   Houston [14th Dist.] 1992,

writ denied) ("An arbitration award has the same effect as a judgment of a court of last resort, and a trial judge reviewing the award may not substitute his judgment for the arbitrator's merely because the trial court judge would have reached a different decision. Not every error of fact or law warrants setting aside an arbitration award, but only those errors that result in a fraud or some great and manifest wrong and injustice.") (internal citation omitted).   As a result, "vacating an arbitrator's award is rare." *City of Laredo v. Mojica*,      S.W.3d    , No. 04-11-00389-CV, 2012 WL 135280, at *4 (Tex. App.   San Antonio Jan. 18, 2012, pet. denied).

Baylor contends that the arbitrator exceeded his authority because his legal interpretation of the contracts and factual findings are contrary to the clear language of the HSA.   Baylor also challenges a number of the arbitrators factual findings.   The FAA provides that an arbitration award may be vacated when "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."   9 U.S.C. § 10(a)(4).   Similarly, the TAA allows the court to vacate an arbitration award when an arbitrator "exceeded [his] powers." Tex. Civ. Prac. & Rem. Code § 171.088(a)(3)(A).

In determining whether an arbitrator exceeded his authority as a basis for vacatur under the FAA, the Fifth Circuit applies the essence test.   Under the essence test, if the arbitrator's decision draws its essence from the contract at issue, the court must accord strong deference toward and sustain the arbitrator's interpretation of the contract, even if the court disagrees with the arbitrator's interpretation of the underlying contract, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Resolution Performance Prod., LLC v. Paper*, 480 F.3d 760, 765 (5th Cir. 2007) (internal quotation marks omitted); *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994).   "To draw its essence from the contract, an

[arbitrator's] award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter and purpose of the . . . agreement. [T]he award must, in some logical way, be derived from the wording or purpose of the contract." *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1218 (5th Cir. 1990) (citation omitted). In applying this highly deferential standard, the court "does not review the language used by, or the reasoning of, the arbitrator[] in determining whether his award draws its essence from the contract" but instead "looks only to the result reached. The single question is whether the award, however arrived at, is rationally inferable from the contract." *Id*. at 1219 n.3. As long as the arbitrator's award draws its essence from the parties' agreement and is not merely "his own brand of industrial justice," the award is legitimate. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (quoting *Steelworkers*, 363 U.S. at 596).

In reviewing a motion to vacate an arbitration award under the TAA, federal case law dealing with similar FAA grounds for vacatur is instructive. *See Las Palmas Med. Ctr. v. Moore*, 349 S.W.3d 57, 69 (Tex. App.   El Paso 2010, pet. denied); *City of Laredo*, 2012 WL 135280, at *4. In *City of Laredo*, the El Paso Court of Appeals followed Fifth Circuit authority in applying the "essence" test to determine whether the arbitrator exceeded his authority in interpreting a collective bargaining agreement. *Id.* at *5. The court therefore applies the essence test to determine whether the arbitrator here exceeded his authority in interpreting the agreements at issue and making related factual and legal determinations based on his construction of the contracts.

Once the arbitration award is issued, the court cannot conduct an evidentiary hearing on the merits of the claims advanced by the parties to the arbitration. *Legion Ins. Co. v. Insurance Gen. Agency*, Inc., 822 F.2d 541, 543 (5th Cir. 1987). The court must defer to the reasonable

determination of the arbitrator. *Anderman/Smith Operating Co.*, 918 F.2d at 1218. Absent a

showing of fraud or bias or prejudice, or reliance upon evidence which is so flimsy that fraud, bias,

or prejudice can be inferred, the courts have no power to review the findings of fact of an arbitrator.

*International Union of Elec., Radio and Mach. Workers Local 1013 v. Ingram Mfg.*, 715 F.2d 886,

890 (5th Cir.1983). When the parties have chosen an arbitrator to be the ultimate factfinder, "[t]he

scope of judicial review of an arbitrator's award is extremely narrow: In order to promote the federal

policy favoring settling of . . . disputes by arbitration *the factual* and the legal *accuracy* of arbitrators'

findings will not be reviewed." *Id.* (quoting *Amalgamated Meat Cutters and Butcher Workmen of*

*N. Am Local 540 v. Neuhoff Bros. Packers, Inc.*, 481 F.2d 817, 819 (5th Cir. 1973) (emphasis added

by *Ingram Mfg.*); *see also International Union of Elect., Radio & Mach. Workers v. Markle Mfg.*

*Co.*, 582 F.2d 9, 10 (5th Cir. 1978) ("We need not express an opinion on the proper interpretation

of the above quoted clause. Interpretation of the collective bargaining agreement, like findings of

fact, is a matter within the province of the arbitrator. '(S)o far as the arbitrator's decision concerns

construction of the contract, the courts have no business overruling him because their interpretation

of the contract is different from his.'") (quoting *United Steelworkers*, 363 U.S. at 99).

In *Nafta Traders v. Quinn*, the Texas Supreme Court explained that because a trial court

serves an appellate function when it reviews for reversible error on a motion to vacate an arbitration

award, it "must have a sufficient record of the arbitral proceedings, and complaints must have been

preserved, all as if the award were a court judgment on appeal." 339 S.W.3d 84, 101 (Tex.), *cert.*

*denied*, 132 S. Ct. 455 (2011). Baylor as the nonprevailing party seeking to vacate an arbitration

award bears the burden of coming forward with a complete record that establishes the basis for

vacating the award. *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 568 (Tex.

App.   Dallas 2008, no pet.). When there is no transcript of the arbitration hearing, "the decision under review is presumed correct on matters where the record is silent." *Nafta Traders*, 339 S.W.3d at 102 n.81 (citation omitted); *Statewide Remodeling, Inc.*, 244 S.W.3d at 568.  This is because:

> For efficiency's sake, arbitration proceedings are often informal; procedural rules are relaxed, rules of evidence are not followed, and no record is made. These aspects of arbitration, which are key to reducing costs and delay in resolving disputes, must fall casualty to the requirements for full judicial review. The parties can decide for themselves whether the benefits are worth the additional cost and delay, but the only review to which they can agree is the kind of review courts conduct. If error cannot be demonstrated, an award must be presumed correct.

*Nafta Traders*, 339 S.W.3d at 101-02.

The court in *Nafta Traders* further explained that unlike the FAA, the TAA "permits parties to agree to expanded review, or to a corresponding limit on the arbitrator's authority . . . but it does not impose such review on every arbitration agreement." *Id.* at 98.  For expanded or limited review, the parties are not required:

> to choose not to be governed by the FAA, since even if it applies . . . it does not preempt the parties' agreement for expanded judicial review. The matter is left to the agreement of the parties. *But absent clear agreement, the default under the TAA, and the only course permitted by the FAA, is restricted judicial review.*

*Id*. (emphasis added); *compare Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 522 U.S. 576, 585-90 (2008) (holding that sections 10 and 11 of the FAA provide exclusive grounds for the review under the statute and regardless of the parties' agreement to the contrary, district courts must review an arbitrator's findings of fact and conclusions of law under the highly deferential standard set forth in 9 U.S.C. § 10(a)).  Because the parties' alternate agreement to arbitrate does not provide, expressly or otherwise, for expanded review of the arbitration award or limit the arbitrator's authority in any

manner, the court must review Baylor's Application to vacate the arbitration award under the restricted default standard of review. *Nafta Traders, Inc.*, 339 S.W.3d at 101.

With this understanding of the court's limited review, it now considers Baylor's prior arguments as to whether the arbitrator exceeded his powers in interpreting the agreements at issue with regard to Legal Conclusions Nos. 1 and 7, and Factual Finding Nos. 5, 6, 7-14, 19, 24-25, and 27-29. Pls.' Mem. 11-23. As herein discussed, the court determines that the arbitrator's award is rationally inferable from the contracts, and it declines to second-guess the arbitrator's factual findings based on the incomplete record before the court. As indicated below, Baylor's grounds for vacating the arbitration award focus on whether the arbitrator exceeded his authority in interpreting the contracts at issue by adding to, subtracting from, or modifying the contracts in violation of section 7.5 of the HSA. Having determined, however, that the HSA arbitration provision does not govern the parties' dispute, the court reviews the arbitrator's award to determine whether he exceeded his authority without reference to section 7.5 of the HSA.

###### E.   Whether the Arbitrator Exceeded His Authority

####### 1.   Conclusion of Law No. 7

######## a.   The Parties' Contentions

Baylor contends that the arbitrator violated section 7.5 of the HSA and exceeded his authority because, contrary to the arbitrator's determination in Conclusion of Law No. 7, section 6.3 of the HSA does not disclaim the agency relationship between HealthSmart and EPS. According to Baylor, Conclusion of Law No. 7 is a "blatant modification" of section 6.3 of the HSA. Baylor also contends that Conclusion of Law No. 7 "completely disregards" the "tri-party contract structure" created by

section 2.2 of the HSA, paragraph 10 of the TPA, and paragraph 1 of the Amendment.  Pls.' Mem.

11.   Conclusion of Law No. 7 states:

> Baylor's Claims are predicated upon the premise that HealthSmart was acting as
> Equitable's agent when its Health Service Agreement was executed, but that
> Agreement in Sec. 6.3 expressly states that Healthsmart, Baylor and Equitable "shall
> continue to be an independent entities, and no such party is an employee, agent or
> representative of any other Party by virtue of this Agreement . . . nor shall any such
> Party have any expressed or implied right or authority to assume or create any
> obligation or responsibility on behalf of or in the name of any other Party by virtue
> of this Agreement." Consequently, as a matter of law[,] Baylor's claims fail.

Pls.' App. 71 (quoting HSA, § 6.3) (emphasis provided by arbitrator).  Baylor contends that section

6.3 applies only to it and HealthSmart, and not EPS.  Baylor argues that, contrary to the arbitrator's

conclusion, section 2.2 of the HSA requires HealthSmart to contract with payors like EPS so they

are bound to the HSA.  Baylor further asserts that paragraph 10 of the TPA "makes brilliantly clear

that HealthSmart is EPS's agent." Pls.' Mem. 12.  Finally, Baylor maintains that paragraph 1 of the

Amendment confirms that EPS is bound to the HSA and the payment terms included in the HSA.

EPS makes a number of arguments in response.  EPS contends that Baylor offers no

explanation for its contention that section 6.3 of the HSA applies only to Baylor and HealthSmart

as "Parties" to the HSA, whereas section 7.5 of the HSA, which also applies only to "Parties," is

binding on EPS although the HSA defines "Parties" as Baylor and HealthSmart.  In other words, EPS

contends that Baylor cannot have it both ways    either the HSA is binding on EPS as a party to the

agreement or it is not.  EPS further asserts that a Baylor witness testified at the arbitration hearing

that section 6.3 rendered EPS, Baylor, and HealthSmart to be independent entities, and not the agents

of one another.  EPS argues that Baylor's failure to present a record of this testimony is fatal to

Baylor's Application on this ground.  Additionally, EPS contends that the arbitrator's interpretation

of the contract is supported by the first sentence of section 6.3, which states: "The relationship of [Baylor] to [HeathSmart] and [EPS] shall continue to be as independent entities." Def.'s Resp. 19 (quoting HSA § 6.3).

EPS also asserts that Baylor's witness admitted during the arbitration hearing that HealthSmart was not EPS's agent. EPS therefore contends that Baylor should not be allowed to retreat from that prior testimony and admission by its witness by relying on section 2.2 of the HSA, section 10 of the TPA, and paragraph 1 of the Amendment. According to EPS, Baylor's witness, after being shown section 4.4(a) of the HSA during the arbitration hearing, "admitted that there was no 'designee' of EPS that was authorized to accept Claims on its behalf." Def.'s Resp. 9. EPS maintains that the witness also indicated that EPS had never received any "Clean Claims" from Baylor pursuant to section 4.4(a) and reluctantly agreed that the 45-day period never began to run on any of the claims at issue. *Id.* According to EPS, Baylor's witness "also agreed that meant that EPS had not missed any payment deadlines, and that it was not obligated to pay Baylor for supposedly missing such deadlines on the claims at issue. That admission also meant that EPS had overpaid certain claims." *Id.*

EPS contends that the arbitrator's award in favor of EPS was based on this testimony and other evidence presented at the arbitration hearing. According to EPS, this is but one example of what occurred during the arbitration hearing. EPS therefore contends that any disagreement by Baylor with EPS's recollection of this testimony or other evidence that was presented at the hearing supports its position that the court cannot review the arbitration award in a meaningfully manner without a record of the arbitration.

**Amended Memorandum Opinion and Order - Page 28**

Baylor does not dispute or take issue with EPS's recollection of the events that occurred during the arbitration hearing.  Baylor instead contends that "extrinsic evidence is only admissible if the contract is found to be ambiguous," and "[t]here is nothing in the Award or the pleadings from the arbitration that suggest[]s that the agreements were found ambiguous or the parties asserted such an argument." Pls.' Obj. 8, n.7.  Baylor therefore maintains that the court can and should review the arbitrator's award based solely on the three contracts, which it contends are unambiguous, without resort to extrinsic evidence.

Regarding the contract provisions relied on by Baylor, EPS argues that the warranty by HealthSmart in section 2.2 of the HSA that it will use its "best efforts" to ensure compliance by Payors with the HSA and any payment time frames set forth in that agreement is not sufficient under Texas law to create an "'agency' relationship or designation between HealthSmart and EPS, let alone the appointment of a 'designee' by EPS under Section 4.4(a) of the HSA," and does nothing more than obligate HealthSmart. *Id.* 17.  EPS further notes that although HealthSmart represented and warranted in section 2.2 "that it has entered into Payor Agreements with Payors for the use of the PPO Network," no such agreement between HealthSmart and EPS existed "until <u>after</u> Section 2.2 was agreed to by Baylor and HealthSmart." *Id.* 18 (quoting Pls.' App. 3, § 2.2) (emphasis in EPS's Response).

EPS maintains that, while it subsequently empowered HealthSmart in section 10 of the TPA executed by them to act as its agent, such power is limited to the negotiation of "<u>provider arrangements on its behalf</u>," and does not make HealthSmart an agent or "designee" of EPS for purposes of the HSA generally or section 4.4(a) of the HSA.  *Id.*(quoting Pls.' App. 75, § 10) (emphasis in EPS's Response).  ESP contends that HealthSmart's and EPS's intent to limit any

agency relationship is reflected in section 9 of the TPA, which states that the parties are "independent contractors" and the TPA "is not intended to create an employer-employee relationship, partnership or joint venture [and] <u>shall not be deemed to create any rights or remedies in persons who are not parties to the [TPA Agreement</u>.]"  *Id*. (quoting Pls.' App. 75, § 9) (emphasis in EPS's Response). EPS therefore maintains that section 10 does not create a "general agency relationship" and instead expressly negates such a relationship.  *Id*. 18.  Because section 10 applies only to HealthSmart's authority to negotiate provider arrangements, and the dispute at hand does not involve HealthSmart's negotiation of provider arrangements on behalf of EPS, EPS contends that section 10 of the TPA is not relevant to the dispute between EPS and Baylor.

With regard to the TPA Amendment between EPS and HealthSmart, EPS asserts that like section 2.2 of the HSA, paragraph 1 of the Amendment says nothing about an agency relationship or "designee" and merely states that EPS will comply with "the applicable terms of the Network's provider agreements, including any established payment timeframes agreed to therein."  *Id*. 19 (quoting Pls.' App. 83).  EPS notes that paragraph 1 of the Amendment also requires HealthSmart to make such timeframes available to EPS but it does not expressly or impliedly create an agency relationship between EPS and HealthSmart.

### b. Discussion

#### i. Adequacy of Arbitration Record

The court addresses first EPS's argument that Baylor's failure to provide a complete record of the arbitration briefing, testimony, and other evidence precludes review of Conclusion No. 7 of the arbitration award.  It is unclear from the record and arbitration award whether the arbitrator in reaching Conclusion No. 7 actually considered the testimony of Baylor's witness regarding the

parties' understanding and performance of their obligations under on section 4.4 of the HSA.  The court nevertheless disagrees that the arbitrator was not permitted to consider such testimony. Because the agreements, when viewed together, do not unambiguously address whether HealthSmart had authority to bind EPS under the circumstances presented, and the agreements contain conflicting language regarding the relationship of Baylor, Healthsmart and EPS and the parties' respective obligations under the various agreements, the arbitrator had the authority to resolve the conflict and was not necessarily confined to the four corners of the contracts as contended by Baylor.  *See Glover v. IBP, Inc.*, 334 F.3d 471, 476 (5th Cir. 2003) (discussing *National Gypsum Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 147 F.3d 399, 404-05 (5th Cir.1998)).

According to EPS, the arbitrator heard testimony on this issue, and a Baylor witness testified that under the HSA, EPS, Baylor, and HealthSmart were independent entities, and not the agents of one another.  Baylor acknowledges that the parties presented testimony and documentary evidence during the arbitration hearing, Pls.' Mem. 2-3, and does not dispute that one of its witnesses testified regarding the agency issue. Baylor's Arbitration Brief likewise indicates that it presented extrinsic evidence to the arbitrator on this issue regarding the parties' past performance to support its position that HealthSmart, rather than Baylor, was responsible as EPS's agent for notifying EPS of the payment time frames under the HSA and forwarding claims to EPS that it received from Baylor.  *See* Pls.' App. 9.

Baylor did not provide a transcript of the testimony presented during the arbitration hearing regarding the parties' independent status and HealthSmart's status as the EPS's agent for purposes of the HSA.  Baylor nevertheless contends that the court can review the arbitrator's award by analyzing the agreements alone without regard to the witness testimony and evidence that EPS and

Baylor presented to the arbitrator on this and other issues.  *See* Pls.' Reply 7.  The court disagrees and concludes that, without a record and transcript of the arbitration hearing and the arbitration testimony referred to in the parties' briefing, it must presume that the arbitrator's decision as to this issue is correct.  *Nafta Traders, Inc.*, 339 S.W.3d at 102 n.81; *Statewide Remodeling, Inc.*, 244 S.W.3d at 568.

Even assuming Baylor is correct that the HSA is unambiguous and the arbitrator lacked authority to render a decision contrary to an unambiguous provision of the HSA, the court should not entertain Baylor's argument at this juncture of the admission of extrinsic evidence when it acknowledges that both parties offered such evidence for the arbitrator's consideration, and there is no indication that Baylor objected to the arbitrator's consideration of such evidence. *Nafta Traders,* 339 S.W.3d at 101("A court must have a sufficient record of the arbitral proceedings, and complaints must have been preserved, all as if the award were a court judgment on appeal.") (footnotes omitted). Moreover, the court concludes that alternative grounds exist for affirming the arbitration award.

### ii.   The Arbitrator's Interpretation of Section 6.3

The court next considers Baylor's argument that Conclusion of Law No. 7 is a "blatant modification" of section 6.3 of the HSA because section 6.3 does not disclaim the agency relationship between HealthSmart and EPS.  In reviewing the arbitrator's award and Conclusion No. 7, the issue under the applicable standard is not as Baylor contends, whether the arbitrator accurately interpreted section 6.3 of the HSA or whether the arbitrator's reasons for concluding as he did regarding the lack of an agency relationship based on section 6.3 are correct.  The court instead looks only to the result reached by the arbitrator and determines whether the award, however arrived at, is rationally inferable from the contracts.  *Anderman/Smith Operating Co.*, 918 F.2d at 1219 n.3.

When read together, the HSA, TPA, and Amendment are not models of pellucid draftsmanship. Under section 2.2 of the HSA, HealthSmart agreed to use its "best efforts" to ensure that each Payor Agreement obligated the Payors to comply with the HSA. Pls.' App. 3, ¶ 2.2. The TPA entered into between HealthSmart and EPS shortly after the HSA was executed, however, does not obligate EPS to comply with the HSA or any provider agreements executed by HealthSmart. *See id.* 73-82. Similarly, while paragraph 1 of the Amendment to the TPA between HealthSmart and EPS states, "HealthSmart shall make available to TPA [EPS] Payment Timeframes for Participating Providers" and obligates EPS to recognize and comply with HealthSmart's provider contracts, including applicable payment time frames, it does not specifically mention the HSA. *Id.* 83-86. Regardless, the court determines that the "best efforts" language in section 2.2 of the HSA and the requirement in paragraph 1 of the Amendment that HealthSmart make available to EPS payment time frames do not support Baylor's contention that HealthSmart was the agent of EPS for purposes of the HSA.

Furthermore, although section 10 of the TPA empowers HealthSmart to act as EPS's "agent to negotiate provider arrangements on its behalf," other language in the TPA shows that HealthSmart's authority in this regard was limited to "price negotiation" and "discount arrangements" that are negotiated on an ongoing basis and does not expressly state that HealthSmart is authorized to bind EPS by contracting on its behalf or for any other purpose. Pls.' App. 73. Any agency relationship between EPS and HealthSmart for purposes of the HSA that would be enforceable by Baylor is further undermined by paragraphs 8, 9, and 13 of the TPA. Paragraph 9 states with regard to the "Relationship of the Parties": "The TPA [EPS] and HSPC [HealthSmart] are independent contractors. This Agreement is not intended to create an employer-employee

relationship, partnership or joint venture between the TPA and HSPC. . . . this Agreement shall not be deemed to create any rights or remedies in person who are not parties to this Agreement." *Id.* 75, ¶ 9.  Paragraph 8 places "Limitations" on HealthSmart's authority and states: "Unless specifically agreed in writing to the contrary, HSPC shall have no authority to bind TPA." *Id.* ¶ 8.  Paragraph 13 also includes the following "Disclaimer":

> **Disclaimer** - While the duty of HSPC under this Agreement is to provide certain information designed to assist TPA in providing better services to covered individuals, such duty of HSPC in no way affects TPA's fiduciary responsibility to covered individuals, damages that may result from dispute . . .  that arise between TPA and any covered individuals, insureds, TPAs, employees and/or their dependents, or with providers, or any other payee or other person in a contractual relationship with TPA.

*Id.* ¶ 13.  Accordingly, the court determines that the HSA, TPA, and Amendment do not support Baylor's contention that HealthSmart is the agent of EPS for purposes of ensuring EPS's compliance with the HSA's payment deadlines and other requirements because none of the contracts, particularly when read together, unambiguously makes HealthSmart the agent of EPS other than for the limited purpose described. The court therefore concludes that the arbitrator's determination that HealthSmart was not acting as EPS's agent is rationally inferable from the contracts.  Accordingly, the court must defer to the arbitrator's conclusion in this regard and cannot conclude that he exceeded his authority based on Conclusion No. 7 of the award.

###### iii.    The Arbitrator's Alleged Disregard of the Parties' Tri-Party Relationship

The court considers next Baylor's argument that Conclusion of Law No. 7 disregards the "tri-party contract structure" created by section 2.2 of the HSA, paragraph 10 of the TPA, and paragraph 1 of the Amendment.  There is no evidence that the arbitrator declined or refused to consider all three

contracts in deciding the parties' claims, and for the reasons already discussed, the court disagrees

that the contracts at issue reflect the parties' unambiguous intent to make HealthSmart the agent of

EPS other than for the limited purposes discussed.  Moreover, the court determines that Baylor's

contention that the arbitrator disregarded the parties' tri-party relationship is in reality an argument

as to whether the arbitrator disregarded the case law relied on by Baylor to support its position that

"[t]his multi-contract structure has been reviewed and enforced by one District Court in the Northern

District of Texas and the Dallas Court of Appeals" in *Baylor Medical Center v. Epoch Group, L.C.*,

340 F. Supp. 2d 749 (N.D. Tex. 2004), and *GPA Holding, Inc. v. Baylor Health Care System*, 344

S.W.3d 467 (Tex. App.    Dallas 2011, pet. denied).  Pls.' Mem. 2.

Although the HSA defines "Party" or "Parties" as Baylor and HealthSmart, and EPS was not

a signatory to the HSA, Baylor has consistently maintained that the HSA and its terms are binding

on EPS because the HSA, TPA, and Amendment constitute a single "unified contract" or "Tri-Party

Agreement."  *Id.* at 2, 4-8.  Baylor argued similarly to the arbitrator that Texas and federal courts

have recognized similar "tri-party arrangement[s]" in the healthcare context and concluded that

similar multiple agreements constitute "a single, unified contract."  Pls.' App. 114, 115-116, n.1;

128-29.  Based on the same reasoning, Baylor contends that it is entitled to enforce the TPA and

Amendment against EPS, even though it is not a party or signatory to those agreements, and the TPA

and HSA both contain provisions disavowing any third party beneficiary status to nonparties.  Pls.'

App. 15, § 6.4; 74, ¶ 9.

To the extent Baylor's argument in this regard is based on its contention that the arbitrator

disregarded applicable law, the court determines that the contention is without merit because the

Fifth Circuit and the Supreme Court have held that manifest disregard of the law is no longer a valid

basis for vacating an arbitration award. *See Hall St.* , 552 U.S. at 585-86; *Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 353-358 (5th Cir. 2009).  Moreover, while Baylor argued to the arbitrator that the agreements in *Epoch Group, L.C.* and *GPA Holding, Inc.* are "materially identical . . . to those at issue in this case," the contracts in *Epoch Group, L.C.* and *GPA Holding, Inc.* are not before this court, and it is unclear from the arbitration record whether they were provided to the arbitrator to compare with the contracts in this case. As a result, Baylor's conclusory and unsubstantiated statement regarding the similarities of the contracts in the cases cited is of no moment.  If, as Baylor contends, the HSA, TPA, and Amendment are one unified contract that is binding on EPS, the court determines that the arbitrator's conclusion that section 6.3's agency disclaimer extends to Baylor, HealthSmart, *and* EPS as parties to the HSA is rationally inferable from section 6.3 of the HSA.

The court further notes that Baylor's arguments as to Conclusion No. 7 are mooted by the court's determination below that the arbitrator's conclusion that Baylor was required to send "Clean Claims" for "Covered Services" to EPS to trigger the forty-five day payment deadline under section 4.4(a) of the HSA is rationally inferable from the HSA.  Accordingly, Baylor is not entitled to vacatur based on its arguments as to Conclusion No. 7.

### 2.      Conclusion of Law No. 1 and Findings of Fact Nos. 6, 19

Conclusion of Law No. 1 states: "Under Section 4.4(a) of the [HSA], Baylor is required to send each 'Clean Claim' of a 'Covered Service' to [EPS]." Pls.' App. 70.  Finding of Fact No. 6 states: "Baylor failed to send the eight (8) health care claims to [EPS] as required by Baylor's [HSA]." *Id.* 67.  Finding of Fact No. 19 states: "Baylor sent all eight (8) claims to HealthSmart instead of to [EPS] as required by its [HSA]." *Id.* 69.

Baylor contends that these findings and conclusions violate section 7.5 of the HSA because Baylor was not required to send its claims to EPS.  Baylor asserts that section 4.4(a) contains no language requiring it to send claims to EPS.  Baylor further asserts that the arbitrator's findings and conclusion in this regard conflict with section 4.4(b), which authorizes Baylor to transmit claims to either HealthSmart *or* EPS.

EPS counters that when read together, sections 4.4(a) and (b) preclude Baylor from sending claims to HealthSmart and that section 4.4(a) merely permits Baylor to submit claims electronically to HealthSmart as the PPO or to EPS as the Payor but does not permit Baylor to send claims to EPS through HealthSmart.  EPS maintains that the HSA, as drafted by Baylor, and section 4.4(a) could have but do not state that EPS is required to pay within 45-days Clean Claims received from both Baylor as Hospital and HealthSmart as PPO; rather, EPS asserts that section 4.4(a) states only that EPS must pay "Clean Claims" received from Baylor within 45-days.

To the extent sections 4.4(a) and (b) conflict, EPS contends that the arbitrator's determination regarding section 4.4(a) is controlling and any conflict must be construed against Baylor as the drafter of the HSA and in favor of EPS and the Plans at issue.  EPS also asserts that the parties agreed during the arbitration that EPS did not have a designee for purposes of receiving a Clean Claim under section 4.4(a) and Baylor has presented no evidence of such an alleged designation.

Section 4.4(a) of the HSA provides: "Payor [EPS] (or its designee) shall correctly and accurately pay all Clean Claims for Covered Services within forty-five (45) calendar days of receipt of a Clean Claim from Hospital [Baylor]."  Pls.' App. 10, § 4.4(a).   Section 4.4(b), on the other hand, states: "For claims sent electronically, the date of claim receipt by PPO [HealthSmart]or Payor

[EPS] shall be deemed to be one (1) day after the date the claim was electronically transmitted by
Hospital [Baylor] . . . to PPO [HealthSmart] or Payor [EPS]."  *Id.* § 4.4(b).

      In light of EPS's undisputed contention as to Baylor's witness testimony regarding HSA
section 4.4 and the witness's alleged admission that EPS had not missed any payment deadlines, the
court concludes that this issue cannot be reviewed without a record of the arbitration.  Even if the
court had been presented with a record of the arbitration, it determines that sections 4.4(a) and (b)
contain conflicting language as to whether Baylor was entitled to submit Clean Claims to
HealthSmart *and* EPS at its discretion, and, more importantly, whether EPS was required only to pay
Clean Claims within 45-days that it received directly from Baylor as opposed to those received from
Baylor via HealthSmart.  "To the extent that there is any ambiguity regarding the meaning of these
two sections or a conflict between the two, the arbitrator was entitled to resolve it" because the
parties bargained for the arbitrator's interpretation of the HSA, not the court's interpretation.  *Glover
v. IBP, Inc.*, 334 F.3d 471 (5th Cir. 2003) (quoting *National Gypsum Co. v. Oil, Chem. & Atomic
Workers Int'l Union*, 147 F.3d 399, 405 (5th Cir. 1998)).  The court concludes that the arbitrator's
interpretation of the HSA in reaching Conclusion of Law No. 1 and Finding of Fact Nos. 6 and 19
is rationally inferable from the language in section 4.4(a) quoted above.  Moreover, without an
arbitration record, the court is unable to conduct a meaningful review of the arbitrator's following
factual findings: (1) "Baylor failed to send the eight (8) health care claims to [EPS]"; and (2) "Baylor
sent all eight (8) claims to HealthSmart instead of to [EPS]."  Pls.' App. 67, 69.  These findings by
the arbitrator necessarily must have been based, at least in part, on evidence presented during the
arbitration. The court therefore concludes that Baylor is not entitled to vacatur on this ground.

**Amended Memorandum Opinion and Order - Page 38**

3.      **Findings of Fact Nos. 24 and 25**

Finding of Fact No. 24 states: "Baylor's Agreement with HealthSmart requires Baylor to notify [EPS] of any relevant time-frames."  Finding of Fact No. 25 states: "Baylor failed to notify [EPS] of the time-frames in its agreement with HealthSmart which Baylor was required to do."  Pls.' App. 69.

Baylor contends that these findings by the arbitrator violate section 7.5 because Baylor has no obligation under the HSA to notify EPS of time frames and section 2.2 of the HSA makes clear that it is HealthSmart's responsibility to ensure that Payors like EPS comply with the duties and obligations of the HSA.  Because the arbitrator concluded that HealthSmart is not the agent of EPS under the HSA, EPS contends that the arbitrator correctly concluded that Baylor was responsible for notifying EPS of relevant time frames.

Finding of Fact No. 24 is based on the arbitrator's interpretation of the parties' agreements, whereas Finding of Fact No. 25 is based in part on the arbitrator's interpretation of the parties' agreements and in part on evidence as to Baylor's performance under the agreements, which is not before the court.  The court determines that the arbitrator's conclusion that "Baylor's Agreement with HealthSmart requires Baylor to notify [EPS] of any relevant time-frames" comports with the arbitrator's prior determination that section 6.3 precludes the existence of an agency relationship between any of the parties to the agreement.  Thus, HealthSmart could not be responsible for notifying EPS of the payment deadline based on any agency relationship between it and EPS.   The court further notes that Baylor does not point to any language in the HSA that specifically required HealthSmart to notify EPS of payment time frames.

Moreover, without an arbitration record, the court is unable to conduct a meaningful review of the arbitrator's purely factual finding, as "Baylor failed to notify [EPS] of the time-frames in its agreement with HealthSmart." Pls.' App. 69.   Likewise, because Baylor presented evidence to the arbitrator, which is not before the court, on the issue of who was responsible as EPS's agent for notifying EPS of the payment time frames under the HSA and forwarding claims to EPS that it received from Baylor, the court concludes that a record of this evidence is necessary to review Baylor's objection to the arbitrator's.   As the party seeking to vacate the arbitration award, Baylor had the burden of coming forward with a complete record that establishes its basis for vacating the award. *See Statewide Remodeling, Inc.*, 244 S.W.3d at 568. Because there is no transcript of the arbitration hearing, the court must presume that the arbitrator's award is correct as to matters where the record is silent. *Nafta Traders, Inc.*, 339 S.W.3d at 102 n.81; *Statewide Remodeling, Inc.*, 244 S.W.3d at 568.  The court therefore concludes that Baylor is not entitled to vacatur on this ground.

### 4.   Finding of Fact No. 5

Baylor contends that Finding of Fact No. 5 violates section 7.5 because the award rewrites the definition of "Covered Services" and "Normal Billed Charge" and HSA section 4.4(a).  Finding of Fact No. 5 states: "Claims of payment for medical services in excess of Baylor's Normal Billing Rates are not 'Covered Services' under Baylor's Hospital Services Agreement." Pls.' App. 67, ¶ 5.

It is not entirely clear from the record, but it appears that the arbitrator concluded that medical services in excess of Baylor's Normal Billing Rates do not constitute a benefit that is payable and therefore does not qualify as Covered Services. Alternatively, it appears that the arbitrator agreed with EPS's argument that even if the section 4.4(a) deadlines were triggered, and even if EPS missed the 45-day payment deadline, the surcharges sought by Baylor are not permitted under the Plans at

issue. Def.'s App. 385. EPS's argument in this regard is based on evidence and testimony that are not before the court. Moreover, the court concludes that the arbitrator's determination in this regard draws its essence from and is rationally inferable from the HSA's definition of "Covered Services." Accordingly, Baylor is not entitled to vacatur on this ground.

### 5.      Findings of Fact Nos. 7 through 14

Baylor contends that Findings of Fact Nos. 7 through 14 violate section 7.5 because the arbitrator failed to give effect to sections 4.4(a) and 4.4(b).  Findings of Fact Nos. 7 through 14 refer specifically to each of the eight claims at issue and, with regard to each, state that EPS did not breach the HSA.  These factual findings also set forth the date each claim was received and paid by EPS and state that EPS received each claim from HealthSmart.  Without an arbitration record, the court is unable to conduct a meaningful review of these factual findings by the arbitrator, which could only have been based on evidence presented during the arbitration.  Moreover, because the challenged findings are factual in nature, the court questions whether it is appropriate to review Baylor's objections to the findings on the ground that the arbitrator exceeded his authority.  *Centex/Vestal v. Friendship West Baptist Church*, 314 S.W.3d 677, 686 (Tex. App.    Dallas 2010, pet. denied) ("In our evaluation of the Church's argument, we are mindful of other courts' caution against a party's 'use of the authority argument as a ruse to induce the reviewing court to redetermine the facts    even just a tiny bit    or reach a legal conclusion on them as found or hoped for which differs from that of the arbitrators.'") (quoting *Island on Lake Travis, Ltd. v. Hayman Co. Gen. Contractors*, 834 S.W.2d 529, 533 (Tex. App.    Austin 1992, writ granted w.r.m.) (citations omitted)).  The court therefore concludes that Baylor is not entitled to vacatur on this ground.

### 6.      Findings of Fact Nos. 27 through 29

Baylor contends that Findings of Fact Nos. 27 through 29 violate section 7.5 because the

award rewrites section 4.4(b).  Finding of Fact No. 27 states: "Baylor and Equitable were operating

under the mutually mistaken belief that the 45-day time frame was triggered by receipt of a claim

by HealthSmart."  Pls.' App. 69, ¶ 27.  Finding of Fact No. 28 states: "Equitable mistakenly caused

the Choctaw nations Plan to pay Baylor an overpayment of $12,788.39 on the Wayla Fields claim."

*Id.* ¶ 28.  Finding of Fact No. 29 similarly states: "Equitable mistakenly caused The City of Durant

Plan to overpay Baylor the sum of $2294.50 on the Rayford Phelps claim and the sum of $22,356.28

on the Robert Rogers claim."  *Id.* ¶ 29.  The court concludes that the arbitrator's determination that

"the 45-day time frame was triggered by receipt of a claim by HealthSmart" draws its essence from

and is rationally inferable from section 4.4(a) of the HSA.  Further, because section 4.4(a) and 4.4(b)

contain conflicting language, the arbitrator had authority, and according to EPS, did hear witness

testimony to resolve this ambiguity.  As already noted, this testimony is not before the court.

Moreover, if Baylor's witness admitted, as EPS contends, that the 45-day period never began to run

on any of the claims at issue, that EPS had not missed any payment deadlines, and that it was not

obligated to pay Baylor for supposedly missing such deadlines on the claims at issue, this issue is

moot.  Thus, Baylor is not entitled to vacatur on this ground.

## IV.      Prejudgment and Post-Award Interest

Baylor contends that EPS is not entitled to prejudgment interest under Texas law because

it filed the arbitration, not EPS, and there is no evidence that EPS ever provided Baylor written

notice of its claims.  EPS counters that it is entitled to prejudgment interest from March 31, 2011,

the date EPS filed its answer in the underlying arbitration and sought a refund of the overpayments

**Amended Memorandum Opinion and Order - Page 42**

by EPS to Baylor for certain claims.  For support, EPS cites to its Answer to Claimants' Statement of Claim that was submitted by Baylor in support of its Application. Pls.' App. 108-110 (Doc. 9). Pursuant to sections 304.103 and 304.003 of the Texas Finance Code, EPS maintains that, under Texas law, the prejudgment rate is the same as the postjudgment rate, which was 5 percent as of March 31, 2011.

Prejudgment interest is calculated under state law in diversity cases such as this one.  *Boston Old Colony Ins. Co. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002); *Executone Info. Sys., Inc. v. Davis*, 26 F.3d at 1329 (citing *Northrop Corp. v. Triad Int'l Marketing S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988), for the proposition that state law applies "to the determination of prejudgment interest in a diversity suit under the Federal Arbitration Act").  In Texas, prevailing parties receive prejudgment interest as a matter of course and an arbitration award "bears interest in the same manner as a judgment of a court of last resort." *Executone Info. Sys., Inc.*, 26 F.3d at 1329-30.  A claim for prejudgment interest may be based upon general principles of equity or an enabling statute. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 552 (Tex. 1985).  Under both the common law and the Texas Finance Code, prejudgment interest begins to accrue on the earlier of: (1) 180 days after the date a defendant received written notice of a claim, or (2) the date suit is filed. Tex. Fin. Code Ann. § 304.104 (West 2006).  Prejudgment interest is awarded to compensate fully the injured party, not to punish the defendant, and is considered compensation allowed by law as additional damages for lost use of the money due between the accrual of the claim and the date of judgment. *See Johnson & Higgins, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998). When the parties' contract does not include a postjudgment rate, section 304.003 of the Texas Finance Code provides that the postjudgment interest is "five percent a year if the prime rate as

published by the Board of Governors of the Federal Reserve System is less than five percent."  Tex. Fin. Code Ann. § 304.003(c)(2).

The arbitrator's August 16, 2011 award orders Baylor to pay EPS prejudgment interest at the maximum rate allowed by law.  The record demonstrates that EPS filed its refund counterclaim on March 31, 2011.  The court therefore concludes that prejudgment interest should be calculated from March 31, 2011, the date EPS filed its counterclaim in the arbitration, which the court considers comparable to the date that a lawsuit was filed.  Further, using a date that is 180 days after the filing would not start the clock for the payment of prejudgment interest until September 27, 2011, which is almost 45 days after the arbitration award was entered and is nonsensical under the circumstances. The court further determines that the prime rate as of March 31, 2011, was lower than five percent. Accordingly, EPS is entitled to prejudgment interest on $37,439.23, the amount of damages for overpayments awarded in the arbitration, to be calculated at **5 percent per annum** from **March 31, 2011**, to the date of entry of the arbitrator's award on **August 16, 2011.**  Prejudgment interest on this amount is **$714.44**, making a total amount of damages and prejudgment interest of **$38,153.67** for this period.

EPS is entitled to post-award interest on $102,114.60, which includes the total amount of damages and prejudgment interest ($38,153.67), attorney's fees ($55,811), and costs ($8,149.49) awarded by the arbitrator, to be calculated at the applicable Texas rate of **5 percent per annum** from **August 16, 2011**, the date of the arbitrator's award, to **July 5, 2013**, the date judgment will be

entered in this case. The total amount of post-award interest on the judgment is therefore **$10,106.70.** Accordingly, the total amount of the judgment is **$112,220.86.**[4]

EPS is also entitled to postjudgment interest at the applicable federal rate on the total amount of the judgment entered in this case. With respect to an award of postjudgment interest, federal law applies on "any judgment in a civil case recovered in a district court . . . including actions based on diversity of citizenship," which is the basis for the court's jurisdiction in this case. *Travelers Ins. Co. v. Liljeberg Enters., Inc*. 7 F.3d 1203, 1209 (5th Cir. 1993) (citation omitted). Federal courts award postjudgment interest pursuant to 28 U.S.C. § 1961. Accordingly, postjudgment interest on total amount of the judgment shall accrue at the current applicable federal rate of **.13 percent per annum** from the date judgment is entered in this case on **July 5, 2013**, until paid in full.

## V.    Conclusion

For the reasons herein explained, the court **grants** Baylor's Motion to Reconsider, **vacates** its March 15, 2012 memorandum opinion and order, and **issues** this amended memorandum opinion and order in its place. *The court's determination in this regard, however, does not affect the outcome of this case or the court's prior determination that arbitration award should be affirmed*. After conducting a de novo review of the pleadings, file, briefing, evidence, and record in this case, and the findings and conclusions of the magistrate judge, the court determines that the findings and conclusions are correct, except for those pertaining to her determination that: (1) the HSA arbitration provision applies to the parties' dispute,  and (2) the TAA alone governs the parties' arbitration agreement. In all other respects, the magistrate judge's findings and conclusions are correct. The

---

[4] The amount was reached by adding the following amounts: $38,153.67; $55,811; 8,149.49; and $10,106.70.

**Amended Memorandum Opinion and Order - Page 45**

court therefore **accepts in part and rejects in part** the findings and conclusions of the magistrate judge as herein set forth.  Accordingly, Baylor's objections are **overruled**; Plaintiff's Motion to Vacate Arbitration Award (Doc. 2) is **denied**; Defendant's Cross-Application to Confirm Arbitration Award (Doc. 15) is **granted**; and Defendant's Motion to Unseal the Record (Doc. 14) is **denied as moot**. The court will enter a judgment by separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure that includes an award of damages, and prejudgment and postjudgment interest.

       **It is so ordered** this 5th day of July, 2013.

Sam A. Lindsay
United States District Judge

**Amended Memorandum Opinion and Order - Page 46**